# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LAMON, | CASE NO. 1:09-cv-00157-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| JOHN TILTON, et al., | (Doc. 69) |
| Defendants. | THIRTY-DAY OBJECTION DEADLINE |

_____/

**Findings and Recommendations - Defendants' Motion for Summary Judgment**

**I.   Procedural History**

Plaintiff Barry Lamon, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 26, 2009.  This action for damages is proceeding on Plaintiff's First Amendment retaliation claim against Defendant Birkholm and Plaintiff's Eighth Amendment medical care claim against Defendants Birkholm, Mayugba, and Schutt.  Plaintiff's claims arise out of the failure to provide him with medically-necessary orthotic boots with custom-made supports between 2006 and 2009, during which time he was in the Security Housing Unit at California State Prison-Corcoran.[1]  28 U.S.C. § 1915A.

///

---

[1] In part, Plaintiff's arguments and evidence submitted in opposition to the pending motion for summary judgment go beyond the scope of the legal claims upon which this action is proceeding.  The Court's screening decisions control and a party may not amend claims by way of an opposition to a motion for summary judgment. E.g., Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011), cert. denied, _ S.Ct. __, 2013 WL 215495, and cert. denied, 132 S.Ct. 2780; Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008), cert. denied, 129 S.Ct. 2763.  (Docs. 19, 26.)

The discovery deadline in this action was May 8, 2012, and on July 19, 2012, Defendants filed a motion for summary judgment. Fed. R. Civ. P. 56(a). (Doc. 69.) After obtaining an extension of time, Plaintiff's opposition and exhibits were received and filed on October 16, 2012, and on October 18, 2012.[2,3] (Docs. 78-83.) Defendants filed a reply on October 23, 2012, and the matter was submitted upon the record. Local Rule 230(l).

Plaintiff filed a surreply on November 5, 2012, but he did not seek leave of court to do so and the Court declines to consider it. (Doc. 85.) The Court recognizes Plaintiff's interest in being fully understood on the issues, but there is no entitlement to file additional briefing and the Court finds it unnecessary.

## II.   Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist.,

///

---

[2] In addition to the notice of the requirements for opposing a motion for summary judgment provided by the Court on June 30, 2011, Defendants issued a contemporaneous notice on July 19, 2012, in accordance with the decision in Woods v. Carey, 684 F.3d 934, 935-36 (9th Cir. 2012).

[3] Plaintiff's request for further discovery in the event that the Court finds he has not raised triable issues of fact, set forth in his opposition with a citation to Federal Rule of Civil Procedure 56(f), now Rule 56(d), is denied. (Doc. 83, Opp., court record p. 54.) Discovery closed prior to the filing of Defendants' motion for summary judgment; Plaintiff's motion to modify the scheduling order to allow for further discovery was denied on July 11, 2012, with prejudice; and Plaintiff's motion for reconsideration was denied on October 11, 2012, with prejudice. (Docs. 37, 68, and 77.) Discovery is closed and the scheduling order will not be modified to allow any further discovery. Fed. R. Civ. P. 16(b)(4); Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011), cert. denied, 132 S.Ct. 1566 (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.   Discussion

### A.   Eighth Amendment Medical Care Claim

#### 1.   Defendants' Facts

##### a.   Defendant Birkholm

Plaintiff transferred to California State Prison-Corcoran (Corcoran) in February 2006, and prior to his arrival at Corcoran, he had neither requested nor purchased orthotic shoes.[4]  Plaintiff arrived at Corcoran with two pairs of sneakers, with which he was satisfied wearing.  Plaintiff's

---

[4] Plaintiff is presently incarcerated at California Medical Facility in Vacaville.

sneakers were taken by correctional staff upon his arrival at Corcoran and he was provided with a pair of flat soled sneaker slip-on shoes, after which he requested orthotic shoes. Plaintiff has neither requested nor been offered treatment by any medical provider for his foot complaints other than orthotic shoes.

On June 9, 2006, Plaintiff was seen by Registered Nurse Practitioner Elias Lu in the facility clinic at Corcoran. In addition to renewing unrelated medications per Plaintiff's request, Lu submitted a referral for Plaintiff to Birkholm's Orthopedic Services, a third-party company that contracted with the California Department of Corrections and Rehabilitation (CDCR) to provide prosthetic and orthotic services to CDCR inmates.

Under the contract between Birkholm's Orthopedic Services and CDCR, Birkholm's Orthopedic Services provided prosthetic and orthotic services, including orthotic devices, ordered for inmates at nine different correctional institutions, including Corcoran.

Defendant Birkholm is the principal of Birkholm's Orthopedic Services, Inc., not a CDCR employee, and he is a certified orthotist and prosthetist. Defendant Birkholm does not hold a medical degree, and he does not diagnose medical issues or conditions for which a person may need a device. As a certified orthotist and prosthetist, he is certified to make, design, and fit medical devices in orthotics and prosthetics that a medical doctor has deemed necessary.

Plaintiff was first seen by Defendant Birkholm on July 12, 2006, at the facility clinic. Defendant Birkholm measured Plaintiff's feet pursuant to the referral from Plaintiff's medical provider requesting orthotic boots and supports. Defendant Birkholm took measurements of Plaintiff's feet using a Ritz stick measuring tool and calipers. The measurements included length, width, and arch height, and Defendant Birkholm used the measurements to place the order for the boots Plaintiff requested upon the recommendation of his doctor. The measurements were used to create custom arch supports, which were then heated and pressure molded into the boots.

On August 22, 2006, Defendant Birkholm delivered to Plaintiff the boots and supports that were ordered and made for him. Plaintiff complained that the boots were too big, and Defendant Birkholm advised Plaintiff that he would re-order the boots and bring shorter ones for Plaintiff.

///

4

When Defendant Birkholm arrives at an institution to provide his contracted services and devices, he is given a list of inmates scheduled by the institution pursuant to CDCR medical provider referrals. Plaintiff was not on the list of inmates with whom Defendant Birkholm was to meet until April 10, 2007, and Plaintiff refused to come to the clinic on April 10, 2007, to meet with Defendant Birkholm regarding his boots.

Plaintiff was on Defendant Birkholm's appointment list for May 15, 2007, which was his next visit to Corcoran. Plaintiff again refused to come to the clinic to meet with Defendant Birkholm and  Defendant was unable to deliver the boots.

After two failed appointments, Defendant Birkholm saw Plaintiff on June 14, 2007. Due to Plaintiff's previous appointment refusals, Defendant did not have the smaller boots with him at that time but requested that Plaintiff be on the next month's appointment list and he would bring the boots with him then.

However, Plaintiff was not on Defendant Birkholm's appointment list again until April 3, 2008. Due to the lapse in time, Plaintiff's feet were re-measured for boots and supports. Plaintiff was advised that it would take approximately six to eight weeks for the new boots to arrive.

On June 11, 2008, Defendant Birkholm delivered the new boots with custom-made insoles to Plaintiff. The insoles were made using Plaintiff's foot measurements and were in the boots when they were delivered to him on June 11, 2008. Plaintiff accepted the boots and insoles.

Defendant Birkholm did not see Plaintiff again after the June 11, 2008, and CDCR did not request that he bring Plaintiff any other orthotic devices.

Plaintiff wore the boots given to him by Defendant Birkholm on June 11, 2008, until they were no longer usable. Plaintiff then requested and received new boots in November 2009 from a different orthotics provider.

Prior to receiving the boots on June 11, 2008, Plaintiff wore the institution-issued canvas shoes with Dr. Scholl's inserts. Plaintiff contends that the insoles in the boots given to him by Defendant Birkholm were not thick enough and he added to the boots his Dr. Scholl's inserts from his canvas shoes.

///

Plaintiff had not met Defendant Birkholm before their first meeting on July 12, 2006, and he had never filed any complaints, grievances, or lawsuits against Defendant Birkholm prior to that date.

### b.   Defendants Mayugba and Schutt

The state prison system has an inmate appeal system, and on June 12, 2008, Plaintiff filed inmate appeal log number 08-2999, in which he claimed that he had not received his orthotic boots. Plaintiff's appeal was granted at the first level of review in that Plaintiff received boots on June 11, 2008.

Plaintiff was dissatisfied with the first-level response to his appeal and he submitted the appeal to the second level of review. Plaintiff also added that the boots he received were lacking an "orthotic-therapeutic insole" and were unattractive. (Doc. 69-6, Schutt Dec., Ex. A, court record p. 10.)

Defendant Mayugba was assigned to perform the second-level review of Plaintiff's appeal. Defendant Mayugba has been licensed as a registered nurse in California since 1992 and has been working as a registered nurse for CDCR since 1994. Defendant Schutt was the acting Health Care Manager at Corcoran from December 2007 to February 2009. Plaintiff has never met or spoken with either Defendant Mayugba or Defendant Schutt.

As a registered nurse, Defendant Mayugba is not permitted to recommend a particular type of medical treatment, nor is she permitted to grant or deny a request for a certain type of medical treatment. In responding to inmate appeals, the nurse is to review the patient's appeal; conduct an interview with the inmate if one has not yet been conducted; review pertinent portions of the patient's medical record; and, if medically appropriate, ensure that he is being seen clinically regarding his medical issues.

In preparing a response to Plaintiff's appeal, Defendant Mayugba reviewed his appeal, his medical records, and the decisions at the lower level of review. Defendant Mayugba's inquiry showed that Plaintiff had been seen by a doctor on the yard on July 1, 2008, with a recommendation for a consult with the outside orthopedic product provider to provide the custom-made insoles. Based on this, Defendant Mayugba determined that Plaintiff's appeal was partially granted because

1   the recommendation for the consult with the outside orthopedic product provider was already

2   pending.

3         As the acting Health Care Manager, Defendant Schutt's duties were entirely administrative

4   and she played no role in the clinical care and treatment of inmates.  Defendant Schutt was neither

5   permitted nor qualified to recommend a particular type of medical treatment, nor was she either

6   permitted or qualified to grant or deny a request for a certain type of medical treatment.

7         In signing the amended second-level response, Defendant Schutt reviewed the responses that

8   had previously been provided and Defendant Mayugba's response at the second level.  Defendant

9   Schutt reviewed, agreed with, and approved Defendant Mayugba's second-level response to

10  Plaintiff's appeal.  Defendant Schutt concluded that Plaintiff's inmate appeal had been properly

11  considered, Plaintiff had received a timely response, and Plaintiff's insole issue was being addressed

12  by the yard doctor's referral to the orthotic provider.

13              **2.    Plaintiff's Facts**[5,6]

14                  **a.    Defendant Birkholm**

15        Plaintiff has very wide feet and suffers from associated bunion deformities, which cause him

16  great pain.  (Doc. 1, Comp., ¶31 & Attach. 1.)  Plaintiff's condition was documented in his prison

17  records as far back as February 21, 2002, at which time Plaintiff was issued a one-year medical

18  chrono documenting that he was to wear state boots with crepe soles.  (Id.)  Plaintiff's foot condition

19  was treated through the use of orthotic shoes.[7]  (Lamon Depo., 19:15-20:2.)

20

21        [5] Plaintiff's opposition and supporting documents were submitted in duplicate, adding confusion to the
    record.  Documents 78 and 80 are duplicative of document 83.  Document 79 is also duplicative of 83, with the
22  exception of exhibit 35, which is located at pages 142-162 of document 79.  Finally, document number 82 is
    duplicative of document 81.

23        [6] Verified complaints and oppositions are treated as opposing declarations, but only to the extent that they
24  are based on Plaintiff's personal knowledge of specific facts which are admissible in evidence.  Jones v. Blanas, 393
    F.3d 918, 923 (9th Cir. 2004).  Mere desire to dispute every fact offered by Defendants does not suffice to raise a
25  dispute; Plaintiff must have personal knowledge of an issue and competency to testify as to that issue for his
    statements under penalty of perjury to raise a disputed issue of fact.

26        [7] Plaintiff purports to dispute Defendants' proffered fact that he did not receive treatment other than orthotic
27  shoes for his foot condition, but the record supports that fact.  Plaintiff attested under penalty of perjury at his
    deposition that he received only orthotic shoes for his condition.  While Plaintiff attested in his declaration that he is
28  also on pain medication, it is clear from the declaration that Plaintiff has other serious, longstanding medical
    conditions for which pain medication is prescribed.  (Lamon Dec., ¶¶10-12.)

1    Plaintiff arrived at Corcoran in February 2006. (Lamon Depo., 10:1-5.)  At some prior point

2    to his transfer, while at California Medical Facility, Plaintiff had been provided with orthopedic

3    boots, but when he arrived at Corcoran in February 2006, he had "personal" Fila and New Balance

4    sneakers to wear, which he had been allowed to purchase and which were sufficient for his needs

5    because they were extra wide and were sufficiently supportive, with the addition of separate insoles.

6    (Lamon Depo., 13:23-17:16.)  However, Plaintiff's personal tennis shoes were confiscated when he

7    arrived at Corcoran and he was provided with flat-soled slip-on sneakers. (Lamon Depo., 21:3-10.)

8    Plaintiff immediately began complaining to medical staff about his painful feet and orthopedic boots

9    were suggested. (Lamon Depo., 20:3-17.)

10    In June 2006, Plaintiff was referred to Defendant Birkholm, the prison's contract orthotics

11    provider, for consultation, sizing, and order placement.[8]  (Comp., ¶32; Lamon Dec., ¶15; Doc. 69-7,

12    court record p. 5.)

13    On July 12, 2006, Plaintiff saw Defendant Birkholm.  (Comp., ¶33; Lamon Dec., ¶16.)

14    Plaintiff explained his medical history and foot pain to Defendant Birkholm, and Plaintiff requested

15    orthotic insoles and some type of soft-soled boots or shoes that could accommodate the orthotic

16    insoles. (Comp., ¶33; Lamon Dec., ¶16; Doc. 83, Memo., court record p. 23, lns. 15-21.)  Defendant

17    Birkholm confirmed Plaintiff's condition, stated Plaintiff that had high arches, and said he would

18    order Plaintiff a pair of orthotic boots with custom-made insoles or arch supports.[9]  (Comp., ¶33;

19

20    The Court recognizes the point Plaintiff is trying to make in objecting, which is that the prescription pain

21    medications he takes for other conditions are also intended to address his foot pain, with adjustments made by
doctors based on his various medical conditions, including foot pain.  However, it remains undisputed that the
specific treatment directed at Plaintiff's foot condition was the provision for orthotic shoes.  This is not to say that

22    Plaintiff did not and does not have serious foot pain as a result of his condition, and he may testify to such, but there
no admissible evidence that a medical professional prescribed a course of treatment other than orthotic shoes for

23    Plaintiff's condition; Plaintiff, as a lay witness, cannot testify to matters which require medical expertise, including
what his condition means from a medical standpoint, what medical treatment for the condition is appropriate, and to

24    what extent doctors considered his foot condition in renewing and/or adjusting his various pain medications.  (E.g.,
Lamon Dec., ¶14.)

25

26    [8] Although Plaintiff alleges in his complaint that Defendant Birkholm is a doctor, it is undisputed that
Birkholm is a certified prosthetist and orthotist who makes and supplies medical devices; he is not a medical doctor.
(Doc. 69-4, Birkholm Dec., ¶1.)

27    [9] The use of terminology is somewhat inconsistent across the filings.  Plaintiff pled in his complaint that

28    Defendant Birkholm ordered him custom-made supports; in his declaration, Plaintiff uses the term "supports;" and in
his verified memorandum, Plaintiff refers to "arch supports," which he contends are different from the custom

8

Lamon Dec., ¶¶17, 19, 24; Memo., p. 23, lns. 21-24.) Defendant Birkholm stated that he would have Plaintiff ducated back in two weeks to make clay moldings of Plaintiff's feet, in order to create the custom supports. (Lamon Dec., ¶24.)

On August 22, 2006, Plaintiff was escorted for another appointment with Defendant Birkholm to pick up his boots, which Plaintiff found confusing because no clay molds had been made. (Comp., ¶34; Lamon Dec., ¶26.) Plaintiff was required to sign for the boots prior to receiving them, and when he received them, he discovered they were much too large and did not have the custom-made insoles. (Comp., ¶¶34, 35.) Defendant Birkholm denied having told Plaintiff that he would be ducated so molds of his feet could be made, and Defendant produced a number of boots of the same type but in different sizes. (Lamon Dec., ¶27.) Plaintiff describes the boots as cheap surplus boots that were clearly non-medical and lacking in any orthotic components. (Id.)

Plaintiff complained that he was in great pain and it had been more than a month since Defendant Birkholm told him he would have molds of his feet made. (Lamon Dec., ¶28.) Defendant Birkholm subsequently relented and said he would have molds made and he would bring Plaintiff back, as Plaintiff wore a size 12 and the closest boot size Defendant had was size 13 ½. (Lamon Dec., ¶31.) Defendant said he would bring a smaller pair and the supports when he returned in two weeks. (Comp., ¶36)

Plaintiff saw Defendant Birkholm approximately one year later during or around July 2007, and then again on or around April 12, 2008, and both times, Defendant said he would bring the boots and supports the next time he came. (Comp., ¶37.)

Plaintiff next saw Defendant Birkholm on June 11, 2008, at which time Defendant finally issued Plaintiff a pair of size 12 boots, but they were the same "bulk-produced" kind he was selling in July 2006 rather than the softer type he began selling in 2007 and they still lacked the supports, which Plaintiff alleges were the only medical component of the boot. (Comp., ¶40; Lamon Dec.,

---

insoles he required. Plaintiff is not qualified to offer his lay opinion regarding the differences between these devices, to the extent there are material differences, or which specific device his condition required, again to the extent there are any material differences. These issues go beyond what a lay witness can testify to, but regardless, the potential differences between these devices, if any, are not material to the resolution of Defendants' motion. The Court recognizes that Plaintiff sought custom-made insoles or supports from Defendant Birkholm and that Plaintiff denies ever receiving any from Defendant Birkholm.

¶32.)  Defendant Birkholm denied that supports had ever been prescribed for Plaintiff or that Plaintiff had paid for any.  (Comp., ¶41.)

Plaintiff denies ever refusing an appointment with Defendant Birkholm, and when Plaintiff saw his primary care provider on July 1, 2008, his provider "reiterated" Plaintiff's need for custom-made insoles.  (Comp., ¶42; Lamon Dec., ¶33.)

In April 2009, Plaintiff was finally given appropriate footwear by another provider.  (Lamon Dec., ¶41.)

### b.    Defendants Mayugba and Schutt

On June 12, 2008, after Plaintiff saw Defendant Birkholm on June 11, 2008, and was given non-orthotic boots, Plaintiff filed an inmate appeal complaining that Defendant Birkholm was depriving him of adequate medical care.  (Comp., ¶44.)  On July 15, 2008, Plaintiff submitted his appeal for a second-level review, which was addressed by Defendants Mayugba and Schutt.  (Id., Attach. 3.)  Defendants partially granted Plaintiff's appeal in that they said he was seen by a yard doctor on July 1, 2008, and a recommendation for a consult with Defendant Birkholm for custom insoles was made.  (Id.)

### 3.    Legal Standard for Eighth Amendment Claims

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial

risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas, 611 at 1151-52; Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"To establish . . . [a] violation, a plaintiff must satisfy both an objective standard - that the deprivation was serious enough to constitute cruel and unusual punishment - and a subjective standard - deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).  For claims arising out of medical care in prison, Plaintiff must first show the existence of an objectively serious medical need, and then show deliberate indifference to that need.  Snow, 681 F.3d at 985; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

**4.**   **Findings**[10]

**a.**   **Defendant Birkholm as a State Actor**

Defendants first argue that as a third-party contract provider, Defendant Birkholm was not a state actor and is not subject to suit under section 1983.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988) (citations omitted).  The presumption is that "conduct by private actors is not state action," Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011), cert. denied, 132 S.Ct. 1000 (2012), but "'state action may be found if . . . there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself,'" Florer, 639 F.3d at 924 (quoting Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295, 121 S.Ct. 924 (2001)).

The state is unquestionably obligated under the Eighth Amendment to provide adequate medical care to its inmates, and in West v. Atkins, the Supreme Court held that a private physician

---

[10] Plaintiff has identified no legitimate evidentiary objections to Defendants' evidence and his objections are overruled.  (Doc. 81.)  There is no suggestion that the documents at issue are not authentic and Plaintiff's desire to dispute the contents or the meaning does not render the documents inadmissible.  Fed. R. Evid. 803(6), 901(b)(4).

who contracted with the state to provide medical care to inmates at the prison hospital, on a part-time basis, was acting under color of state law for purposes of section 1983.[11]  West, 487 U.S. at 54. While Defendant Birkholm is not a medical doctor, he contracted with the state to provide orthotics and prosthetics to inmates at nine different prisons, upon referral by prison medical staff.  Defendant Birkholm was "certified to make, design and fit medical devices in orthotics and prosthetics that a medical doctor has deemed necessary," and any argument that the orthotic or prosthetic devices, and Defendant Birkholm's services, did not fall within the purview of medical care is untenable. (Birkholm Dec., ¶1.)  By virtue of his contract with CDCR, Defendant Birkholm was authorized and obligated to treat inmates who were referred to him for orthotic or prosthetic devices: he was *the* provider for those services.  West, 487 U.S. at 55.

While Defendants argue that "[t]he provision of orthotic and prosthetic services is associated with private companies, not the public," the determination that Plaintiff was entitled to orthotic devices for his foot problems was made by prison medical staff, the function of providing Plaintiff orthotic devices was delegated to Defendant Birkholm by CDCR, and Plaintiff was referred to Defendant Birkholm by prison medical staff.  West, 487 U.S. at 56.  (Doc. 69-1, 8:24-26; Birkholm Dec., ¶¶2, 3.)  That Defendant Birkholm was not a medical doctor as was the defendant in West is immaterial in this particular circumstance: Defendant Birkholm was the sole provider of orthotic and prosthetic devices for inmates at Corcoran between 2005 and June 2009 and he provided those services upon, and only upon, direct referral from prison medical staff.  (Birkholm Dec., ¶¶ 2, 7.)

Accordingly, the Court finds that Defendant Birkholm was acting under color of state law for section 1983 purposes when he consulted with Plaintiff and arranged to provide orthotic boots and supports.  West, 487 U.S. at 54.

**b.    Objective Element - Existence of Serious Medical Need**

Defendants next argue that Plaintiff did not have an objectively serious medical need.

To meet the objective element, Plaintiff must show that the denial of care resulted "in the 'unnecessary and wanton infliction of pain.'"  Snow, 681 F.3d at 985 (quoting Estelle v. Gamble,

---

[11] In arguing Defendant Birkholm was not acting under color of state law, Defendants fail to acknowledge or attempt to distinguish the decision in West.

429 U.S. 97, 104, 106, 97 S.Ct. 285 (1977)).  Indications of a serious medical need are the existence

of an injury that a reasonable doctor would find important and worthy of comment or treatment, the

presence of a medical condition that significantly affects an individual's daily activities, and the

existence of chronic or substantial pain.  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000)

(citation omitted); accord Wilhelm, 680 F.3d at 1122.

Defendants do not support their position with any medical evidence upon which the Court

might rely for the proposition that Plaintiff's foot condition did not constitute a serious medical need.

Notably, the record is devoid of any expert witness's analysis of Plaintiff's foot condition.  It is clear

from Plaintiff's medical records that the condition of his feet merited, in the opinion of prison

medical staff, at least special shoes, be those orthotic boots and supports or personal tennis shoes

with additional insole inserts.

Given that the issue was documented in Plaintiff's medical records, orthotics were

prescribed, and the issue allegedly caused Plaintiff severe, chronic pain, there exists evidence upon

which a trier of fact might find that Plaintiff's condition was one which (1) a reasonable doctor

would find important and worthy of comment or treatment, and/or (2) caused Plaintiff chronic and/or

substantial pain.  Lopez, 203 F.3d at 1131; accord Wilhelm, 680 F.3d at 1122.  At a minimum, there

exists a triable issue of fact regarding whether Plaintiff's foot condition constituted a serious medical

need.[12]  As a result, Defendants are not entitled to judgment as a matter of law on the objective

element of Plaintiff's Eighth Amendment claim.

### c.    Harm

The Court next turns to Defendants' argument that there is no evidence the delay in treatment

caused Plaintiff any further harm.

First, Defendants incorrectly articulate the standard as requiring "substantial harm." (Motion,

12:19-22.)  The further harm suffered need not be substantial.  Wilhelm, 680 F.3d at 1122 (citing

Jett, 439 F.3d at 1096).

---

[12] The Court notes that the referral to Defendant Birkholm in June 2006 was noted as "routine," but given that Plaintiff's foot issue was one of longstanding and the delay at issue was years-long, the notation of the referral as routine does not support a finding that, as a matter of law, the medical need was not serious.  (Doc. 69-7, Ex. A, court record p. 5.)

1         Second, the record is replete with evidence, which at this stage must be accepted as true and

2 which may not be subject to weight or credibility assessments, that Plaintiff's untreated foot

3 condition caused him chronic, substantial pain.  The wanton, unnecessary infliction of pain

4 constitutes harm, Snow, 681 F.3d at 985, and a lengthy delay in treatment which causes an inmate

5 to unnecessarily suffer pain is unquestionably harm within the meaning of the Eighth Amendment,

6 Snow, 681 F.3d at 987; Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

7                   **d.**     **Subjective Element - Deliberate Indifference**

8         Finally, Defendants argue that they did not act with deliberate indifference toward Plaintiff's

9 medical needs.

10         Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's

11 pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122

12 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which

13 entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks

14 omitted); Wilhelm, 680 F.3d at 1122.

15         "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060

16 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from

17 which the inference could be drawn that a substantial risk of serious harm exists,' but that person

18 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).  "'If

19 a prison official should have been aware of the risk, but was not, then the official has not violated

20 the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe,

21 Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

22                  **1)**     **Defendant Birkholm**

23         Defendants contend that after medical staff referred Plaintiff to Defendant Birkholm for

24 orthotic shoes, he took measurements, ordered the shoes and insoles, and provided them to Plaintiff.

25 Defendants contend that after Plaintiff complained about the fit, Defendant Birkholm re-ordered a

26 smaller size, but Plaintiff did not show up for the next two appointments and at the third

27 appointment, Defendant did not have the shoes with him.  Defendant then re-measured Plaintiff's

28 feet due to the lapse of time and ordered new shoes and insoles, which he delivered on June 11,

2008.  Defendants argue that the lengthy delay was not solely attributable to Defendant Birkholm, as Plaintiff refused to attend several appointments, and Plaintiff's allegations sound more in negligence, which is insufficient to support a claim.

In determining whether Defendant Birkholm knew of and disregarded Plaintiff's serious medical need for orthotics, the evidence must be viewed in the light most favorable to Plaintiff. Plaintiff had problems with his feet, described as "very wide with associate bunion deformities" as far back as 2002.  In June 2006, following his arrival at Corcoran, Plaintiff's suitable personal tennis shoes with insoles were confiscated, and he was referred to Defendant Birkholm for a "routine" orthotics consultation based on a principle diagnosis of "foot pain." (Comp., Attach. 1; Beltran Dec., Ex. A, court record p. 5.)  Plaintiff was seen by Defendant Birkholm on July 12, 2006, and Defendant took measurements, said he would make molds of Plaintiff's feet, and said he would order boots and supports.  (Comp., Attach. 2; Beltran Dec., Ex. A, p. 5.)  No molds were made, however, and on August 22, 2006, a pair of regular-appearing boots were given to Plaintiff, but the boots were too big and they lacked custom-made supports or any orthotics.  When Plaintiff complained, Defendant Birkholm said he would make molds and order a smaller pair.

Upon arrival at the prison for each visit, Defendant Birkholm was given an appointment list prepared by a scheduling nurse.  Plaintiff was not on Defendant Birkholm's appointment list again until April, 10, 2007; Plaintiff did not arrive for his appointment.[13]  Plaintiff was again on the list for May 15, 2007, but he did not arrive for that appointment, either.  Defendant then saw Plaintiff on June 14, 2007;  Plaintiff did not have the smaller boots with him because he had missed the two prior scheduled appointments.  Defendant next saw Plaintiff on April 3, 2008, and during the June 14, 2007, and April 3, 2008, appointments, Defendant told Plaintiff he would bring the boots and supports the next time he came.

On June 11, 2008, Defendant Birkholm issued Plaintiff a pair of boots, but they still lacked the supports.  Defendant Birkholm's contract ended in June 2009 and Plaintiff was subsequently provided with appropriate boots by a different provider.

---

[13] The Court accepts as true that Plaintiff did not refuse his appointments and in describing Plaintiff as failing to arrive for his two appointments, no culpability is assigned to Plaintiff.

Deliberate indifference may be shown when officials deny, delay or intentionally interfere with medical treatment," Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (quotation marks omitted), but the focus of the subjective element is "what a defendant's mental attitude actually was," Toguchi, 391 F.3d at 1057.  In this case, while Defendant Birkholm was a provider of medical devices within the prison's medical care system, he was not a medical doctor and was not involved in providing primary care to Plaintiff for medical issues.  Defendant Birkholm was a provider of orthotic and prosthetic devices, and in that capacity, he was responsible for consulting with inmates, taking measurements, placing orders, and providing to inmates the devices which prison medical staff had determined the inmates needed.[14]  Although Defendant Birkholm apparently had at least some limited ability to request that an inmate be placed on the ducat list, a nurse prepared the schedule and provided a list of inmates to Defendant Birkholm when he arrived at each of the nine institutions he serviced.

For reasons unclear from the record, Defendant Birkholm failed to make clay molds of Plaintiff's feet as he promised, and he failed to deliver boots with supports, as promised.  Again for reasons unclear from the record, Plaintiff was not scheduled to see Defendant Birkholm between August 22, 2006, and April 10, 2007.  There is no evidence in the record that Defendant Birkholm was personally responsible for the almost eight-month delay in scheduling Plaintiff to be seen, and at most, Defendant's failure to see Plaintiff after stating he would make molds of Plaintiff's feet might rise to the level of negligence.  In short, there is simply no evidence of deliberate indifference given that Defendant was a contract provider who serviced nine different prisons and relied upon a scheduling nurse to notify him which inmates would be seen on each visit.  Deliberate indifference requires more than lack of due care or negligence.  That Defendant should have been more diligent is unquestionable, but that is insufficient to support a finding of deliberate indifference.

///

---

[14] The Court recognizes Plaintiff's vigorous argument that Defendant provided medical care, including "diagnosing" him with high arches.  The issue of high arches is not material, however; the material issue is that Plaintiff was in need of orthotics and Defendant was to supply them.  Further, that Defendant was responsible for assessing orthotic and prosthetic needs, taking measurements, and fitting devices does not transform him into a primary care provider responsible for the inmate's underlying medical issues.  Defendant was responsible only for providing the services for which he contracted to provide: orthotic and prosthetic devices.

1    Plaintiff was also scheduled on May 15, 2007, and June 14, 2007; the latter resulted in the

2    first consultation between Plaintiff and Defendant Birkholm since August 22, 2006.  Defendant did

3    not have any boots with him during that visit because Plaintiff had missed two previous

4    appointments.  Again, this at most suggests negligence, not deliberate indifference.

5    Finally, Defendant Birkholm saw Plaintiff on April 3, 2008, but given the time lapse, he did

6    not have boots with him.  Defendant ultimately provided Plaintiff with a pair of boots on June 11,

7    2008, but no supports.  Again, Defendant Birkholm arguably failed to exercise due care, but a

8    finding of deliberate indifference is not supportable based on the record.

9    As previously stated, viewed in the light most favorable to Plaintiff, the condition of his feet

10   constituted a serious medical need warranting orthotics.  Plaintiff should not have waited

11   approximately three years to be provided with adequate orthotics.  However, it is not clear who was

12   responsible for the long delays in scheduling Plaintiff to see Defendant Birkholm.  While Defendant

13   Birkholm's response to Plaintiff's need for orthotics fell short, an apparent pattern of general conduct

14   which led to the termination of Defendant's contract with CDCR, there are simply insufficient facts

15   upon which a reasonable trier of fact could find that Defendant Birkholm possessed the requisite

16   subjective intent.  What is material is what Defendant *actually* knew rather than what he *should have*

17   known, and the record does not support a finding that Defendant knowingly disregarded an excessive

18   risk of harm to Plaintiff's health.

19                                **2)    Defendants Mayugba and Schutt**

20   Although Plaintiff attempts to expand the scope of his claims against Defendants Mayugba

21   and Schutt in his opposition and hold them responsible for failing to supervise Defendant Birkholm,

22   also addressed in footnote 1, the claim upon which this action proceeds is limited to the issue of

23   whether they acted with deliberate indifference to Plaintiff's serious medical needs vis a vis their

24   response to Plaintiff's July 2008 inmate appeal.

25   Section 1983 requires a link between the violation claimed and the defendant's conduct.

26   Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009);

27   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Here, the only link alleged is Defendants

28   Mayugba and Schutt's review and resolution of Plaintiff's inmate appeal at the second level of

1  review.  There is no *respondeat superior* under section 1983 and, while there is no admissible

2  evidence that either Mayugba or Schutt supervised Birkholm, any claim by Plaintiff that they can be

3  held liable for the past conduct of Defendant Birkholm of which they were unaware is nonetheless

4  untenable.  Simmons, 609 F.3d at 1021; Ewing, 588 F.3d at 1235.

5        Defendants argue that they are entitled to judgment as a matter of law because they reviewed

6  Plaintiff's appeal after he received orthopedic boots on June 11, 2008, and his difference of opinion

7  regarding the appearance of the insoles provided does not support a claim.  Defendants further argue

8  that their response to the appeal was appropriate, as the yard doctor had already referred Plaintiff

9  back to orthotics regarding his complaints, neither Defendant was permitted to recommend a

10  particular treatment or grant a request for a particular treatment, Plaintiff's medical issues were

11  slated to be addressed by the appropriate care providers, and Defendants did not have control over

12  Defendant Birkholm, an independent contractor.

13       Prison officials may be held liable if they are on notice of an inmate's serious medical needs

14  and they fail to respond, Snow, 681 F.3d at 989; Jett, 439 F.3d at 1098, and the law clearly requires

15  that prison officials take reasonable measures to abate a risk of harm of which they become aware,

16  Farmer, 511 U.S. at 847.  Thus, a defendant is not necessarily absolved of liability simply because

17  her involvement was limited to an administrative appeal review.  See Jett, 439 F.3d at 1098 (prison

18  administrators not entitled to summary judgment where the inmate claimed to have sent them letters

19  complaining about his medical care).  The question is whether Defendants Mayugba and Schutt acted

20  with deliberate indifference to Plaintiff's medical needs in July 2008 when they reviewed and

21  resolved his appeal at the second level of review.

22       Although Defendants describe Plaintiff's appeal as expressing dissatisfaction with

23  "unattractive" boots, that mischaracterizes the nature of the appeal.  Plaintiff's appeal placed

24  Defendants Mayugba and Schutt on notice that Plaintiff was complaining he had waited for

25  approximately two years to receive orthotics for his foot condition, only to be provided with overly

26  large, non-medical boots without an "orthotic-therapeutic insole" by Defendant Birkholm on June

27  11, 2008, and that his feet were causing him severe pain.  (Comp., Attach. 3.)

28  ///

1    Plaintiff must present sufficient evidence to raise a triable issue of fact as to the subjective

2    element of his claim, which requires a showing that Defendants Mayugba and Schutt knowingly

3    disregarded an excessive risk of harm to his health.  Prison officials' duty "is to ensure reasonable

4    safety" and they may escape "liability if they responded reasonably to the risk, even if the harm

5    ultimately was not averted."  Farmer, 511 U.S. at 844-45.

6    Plaintiff received boots from Defendant Birkholm on June 11, 2008, but they were

7    inadequate and Plaintiff filed an inmate appeal.  By the time Defendants Mayugba and Schutt

8    reviewed his appeal in July 2008, Plaintiff had been seen by the yard doctor on July 1, 2008, and

9    referred back to Defendant Birkholm.  On that basis, Defendants partially granted Plaintiff's appeal.[15]

10   The Court well appreciates why that response frustrated Plaintiff given the two- year wait for

11   those boots, but the narrow question here is whether, in responding to the appeal in July 2008 and

12   in light of the circumstances at that time, Defendants acted reasonably in response to Plaintiff's

13   complaint of inadequate medical care.  The Court finds that they did.

14   Given the circumstances and the information available to them at that time, Defendants

15   responded reasonably in concluding that Plaintiff's complaint regarding the provision of boots which

16   were inappropriate and did not meet his medical needs had been addressed.  Defendants may not be

17   held liable for the preceding two-year wait and at the time they reviewed Plaintiff's appeal, he had

18   recently seen a medical doctor about the inappropriate boots and he been referred back to Defendant

19   Birkholm for custom-made insoles.  There is simply no support for a claim that Defendants Mayugba

20   and Schutt were deliberately indifferent to Plaintiff's medical needs in July 2008 and they are

21   entitled to judgment as a matter of law.

22        **B.    First Amendment Retaliation Claim**

23             **1.    Parties' Positions**

24   Defendants argue that there is no evidence to support Plaintiff's claim that Defendant

25   Birkholm retaliated against him for the exercise of his First Amendment rights, and that Plaintiff

26   merely speculates that Defendant, who had never met Plaintiff before, conspired with correctional

27

28   _____
     [15] The appeal was denied as to monetary compensation.

staff to retaliate against him.  Defendants argue that given the delay exposed Defendant Birkholm to litigation, Plaintiff's retaliation claim is implausible.

Plaintiff contends that Defendant Birkholm failed to provide him with the smaller boots and supports as he promised on August 22, 2006, in retaliation against him for filing lawsuits and inmate appeals.  (Comp., ¶¶36, 55.)  Plaintiff alleges that on August 22, 2006, after he accused Defendant Birkholm and the escorting correctional officers of engaging in a scam and he complained about the boots and lack of insoles, Defendant Birkholm and the officers made crude, snide remarks, including, "Oh, here we go again!  Another of those!"  (Comp., ¶36; Lamon Dec., ¶29; Lamon Depo., 37:11-40:8.)  Plaintiff further alleges that they began discussing Plaintiff and referring to him as "a Legal Beagle wannabe who was clearly gearing up to file more prison grievances and lawsuits."  (Lamon Dec., ¶30; Memo., court record p. 20, lns. 22-24; Lamon Depo., 37:11-40:8.)

### 2.  Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

### 3.  Findings

Defendant Birkholm, as the principal of Birkholm's Orthopedic Services, was under contract with CDCR to provide orthotics and prosthetics between 2005 and 2010.  However, on June 29, 2009, CDCR terminated its contract with Birkholm's Orthopedic Services.  (Doc. 69-4, Ex. C, court record pp. 83-4.)  The termination letter stated that Birkholm's Orthopedic Services failed to provide

///

services as needed to four prisons, including Corcoran; failed to comply with contractual delivery time frames; and failed to meet CDCR standards, policies, and procedures. (Id.)

Prior to July 12, 2006, Defendant Birkholm had never met Plaintiff. Accepting as true that Plaintiff is well known within the prison as a litigator; and that the correctional officers, joined by Defendant Birkholm, derided Plaintiff for being a litigator and filing grievances, this is the only evidence Plaintiff has that Defendant Birkholm failed to timely deliver his orthotic boots out of retaliation against him for exercising his First Amendment rights. While Plaintiff has a constitutionally protected right to file lawsuits and inmate appeals, to raise a triable issue of fact, he must come forth with evidence that his engagement in filing lawsuits and inmate appeals, an activity of which Defendant may have been generally aware as a result of the correctional officers' comments but of which Defendant had neither been a target nor had any prior familiarity with, "was the substantial or motivating factor behind" the delay in providing Plaintiff with orthotic boots and the failure to provide Plaintiff with the custom-made insoles. Brodheim, 584 F.3d at 1271 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)) (internal quotation marks omitted).

As an initial matter, the Court rejects Defendants' argument that Plaintiff's claim is implausible because the delay actually exposed Defendant Birkholm to litigation. Any suggestion that exposure to litigation is sufficient to prevent people from engaging in retaliatory conduct, or otherwise violating the law, is belied by court dockets nationwide. However, given that Defendant was a third-party contractor who had no contact with Plaintiff prior to July 2006 and that Defendant's contract with CDCR was terminated for cause in June 2009 because the very same delays and failure to deliver devices at issue here was widespread across four prisons, Plaintiff's evidence falls short of supporting a reasonable inference that the delay and the failure to provide the necessary orthotic devices was motivated out of retaliation against Plaintiff for the exercise of his First Amendment rights; a mere scintilla of evidence is not sufficient. In re Oracle Corp., 627 F.3d at 387 (citation omitted). Accordingly, the Court finds that Defendant Birkholm is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

///

**IV.      Conclusion and Recommendation**

Defendants Birkholm, Mayugba, and Schutt are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment medical care claims, and Defendant Birkholm is entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim.  As a result, the Court does not reach Defendants' additional argument that they are entitled to qualified immunity.

For the reasons set forth in section III, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on July 19, 2012, be GRANTED, concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:      February 6, 2013                              /s/ Sheila K. Oberto            **
UNITED STATES MAGISTRATE JUDGE